The Honorable Ricardo S. Martinez

# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff<br><br>        v.<br><br>KEITH WITT<br><br>        Defendant. | NO. CR25-46 RSM<br><br>UNITED STATES SENTENCING MEMORANDUM |

Despite his testimony to the contrary, a jury found 55-year-old Keith Witt had nonconsensual sexual contact with a teenager seated next to him on a flight from Billings, Montana to SeaTac, Washington. After the victim ("V1") pretended to sleep to avoid talking with Witt, he repeatedly molested her, touching her bare thigh with his fingers and moving his hand up her inner thigh until his fingers were only an inch or two below her genitals. Fortunately, V1 escaped his escalating behavior and alerted authorities to his actions. For Witt's brazen, sexually motivated acts, the United States respectfully recommends the Court impose a custodial sentence of 21 months to be followed by a five-year term of supervised release. The United States further recommends the Court

United States' Sentencing Memorandum - 1
*United States v. Witt*, CR25-46 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

order restitution in the amount of $4,487.45for the costs V1 incurred as a direct result of Witt's conduct.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Having seen evidence and heard witness testimony firsthand, the Court is acutely familiar with the facts of this case as adduced during trial. As relevant to the Court's imposition of a sentence, the government offers the factual summary below.

**A.    Offense Conduct**

On August 11, 2023, 19-year-old V1 boarded an Alaska Airlines flight in Billings, Montana, bound for Seattle-Tacoma International Airport. She had just completed an internship and was traveling alone on her way back home. V1 was seated in seat 7D, a window seat, next to Keith Witt.

Upon boarding, Witt initiated conversation with V1. He asked her personal questions: where did she live, what did she do for work, where did she go to high school, and how old she was—a question he asked multiple times. V1 could smell alcohol on his breath, but she could tell that he was not drunk. She felt uncomfortable by his prying questions but did not want to be rude and so she responded.

Witt complimented V1 repeatedly, telling her she was very mature and had "a lot of wisdom." He called her "amazing" and "a box of bubbles." He complimented her name several times. He told her she was close to the age of his daughter, who was 26—despite the seven-year age difference. Witt also told V1 that he did not have a relationship with his daughter.

As Witt continued to talk to V1, he told her he had a stressful week and needed to de-stress on the flight. He asked her for permission to de-stress. As he spoke with her, he touched her arm and shoulder. V1 felt uncomfortable throughout the conversation.

Other passengers on the flight observed the interaction between Witt and V1. One passenger, who was seated across the aisle from them, stated that she thought they were father and daughter because Witt was in V1's personal space and touched her arm,

United States' Sentencing Memorandum - 2
*United States v. Witt*, CR25-46 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

shoulder, and hair with his hand. The passenger observed V1 appear to be upset and irritated by the interaction.

At one point, V1 placed ear buds in her ears; Witt reached out his hand and touched them while they were inserted in her ear. He asked what they were. Although she was deeply uncomfortable, she again responded to Witt's question in attempt to be polite.

Finally, in an effort to avoid further questions and conversation, V1 pretended to fall asleep. She pulled her body up and angled herself toward the window and away from Witt. She pulled her body so close to the window that Witt could have put his hand on her seat without touching her. She hoped this would end their contact.

As she pretended to sleep, V1 felt Witt's finger touch her bare thigh, below the shorts she was wearing. She opened one eye and could see his right hand on her left thigh, but she continued to pretend to sleep. She was unsure of what to do, unsure if the contact was accidental. Shortly thereafter, a flight attendant came by with beverage service, and Witt pulled his hand away from V1's thigh quickly. He ordered wine as V1 continued to pretend to sleep. She hoped the touching was over.

After the flight attendant left, Witt again moved his hand onto V1's thigh. In an effort to get his hand off her body, V1 flinched. Witt pulled his hand away. But as V1 continued to pretend to sleep, Witt put his fingers back on her thigh.

As Witt was touching her thigh, V1 saw that his left hand was on his genitals over his pants. She observed Witt getting sexually aroused. She also noticed that he was bouncing one of his legs. V1 flinched again, hoping to get Witt off her body, and Witt pulled his hand away.

But as V1 continued to pretend to sleep, Witt, undeterred, moved his fingers back onto her inner thigh and began to move them up toward her genitals. Eventually, he moved his fingers to within one to two inches of her genitals when he began to put his finger under the helm of V1's shorts. Fearful of what he might do to her, V1 flinched again and pretended to wake up. Witt pulled his hand away again quickly. As if to

United States' Sentencing Memorandum - 3
*United States v. Witt*, CR25-46 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

confirm his belief that she was in fact sleeping, he asked her how well she slept. To avoid confronting him there and then, V1 told him she was a heavy sleeper. He seemed to relax at her response. She asked to go to the bathroom. As Witt got up to let V1 out of the row, she observed that he had an erection. As she turned to go to the lavatory at the back of the plane, Witt told her to go to the first-class restroom ahead of them, saying that it was nicer. V1 turned and did what he said. She walked toward the first-class lavatory, approached a flight attendant, and reported what happened.

V1 described to the flight attendant what Witt did to her. The flight attendant told her that he would take care of it, and she went to the lavatory. Once she was in the restroom, V1 began to sob. She texted her friend, "hi[,] i really need to talk to someone right now." Her friend did not respond. V1 texted her mother:

> **V1**: mom.
>
> are you getting this text?
>
> **Mother**: Yes
>
> **V1**: i'm not comfortable
>
> **Mother**: Why
>
> **V1**: the guy next to me
>
> i'm currently crying in the first class bathroom while the flight attendants handle it
>
> **Mother**: What is happening.
>
> **V1**: i was pretending to be asleep because he made me uncomfortable and he started touching me and at first i was like there's no way and then he just kept getting closer and closer up my thighs and he was hard and touching himself discreetly so i was like i have to go to the bathroom then told the flight attendants[.]

Exh. 1 (Gov. Tr. Exh. 5).

While V1 was in the restroom, the flight attendant told her that they could move her to the back of the plane. V1 told the flight attendant that she did not want to do that

United States' Sentencing Memorandum - 4
*United States v. Witt*, CR25-46 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

because she did not want to walk past Witt. The flight attendants ultimately moved Witt to the back of the plane.

After about 15 minutes or so, the flight attendants told V1 that she needed to return to her seat for safety reasons. V1 returned to her seat and took her stuffed animal out of her bag. She pulled her legs up toward her chest and sat crouched toward the window, hugging her legs and her stuffed animal. The flight attendants and other passengers observed that V1 was upset; they could see she had been crying, with mascara running down her face. A flight attendant approached V1 in attempt to comfort her. V1 told the flight attendant that she needed her mom. She did not want to talk to anyone until she could see her mom.

Once the plane landed, police officers met them and escorted V1 to the concourse where she met her mother and was interviewed. She recounted what happened to her and confirmed that she never gave Witt permission to touch her inner thigh or any other part of her body.

Officers also escorted Witt off the plane and interviewed him. He told them that he did not intentionally touch V1, he was asleep for most of the flight, and repeated that V1 was just like his "little girl."

**B.      Procedural History**

On March 26, 2025, a grand jury returned an indictment charging Witt with Abusive Sexual Contact, in violation of 18 U.S.C. § 2244(b) and 49 U.S.C. § 46506(1). Dkt. 1.

On February 10, 2026, after a two-day trial, a jury convicted Witt of Abusive Sexual Contact. Dkt. 48. In less than two hours, the jury evaluated the testimony of nine witnesses, including that of Witt, and concluded beyond a reasonable doubt that Witt had nonconsensual sexual contact with V1 on the flight. In reaching this verdict, the jurors considered Witt's testimony, including his testimony that he had not consumed alcohol before the flight, that he fell asleep on the flight, that he did not intentionally touch V1,

United States' Sentencing Memorandum - 5
*United States v. Witt*, CR25-46 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

that he had a visible nail fungus, and that he suffered from erectile dysfunction, which was offered to cast doubt on the credibility of V1's testimony.

The Court permitted Witt to remain on bond pending sentencing. *Id.*

## II.    STATUTORY PENALTIES

The offense of Abusive Sexual Contact, in violation of Title 18, United States Code, Section 2244(b), and Title 49, United States Code, Section 46506(1), is punishable by a maximum term of imprisonment of two years, a mandatory minimum period of supervised release of five years and a maximum term of life, a fine of up to $250,000, and a mandatory special assessment of $100.

## III.    SENTENCING GUIDELINES CALCULATIONS

### A.    Offense Level

The government agrees with U.S. Probation's sentencing guidelines calculations. The base level offense for a conviction under 18 U.S.C. § 2244(b) is 12. United States Sentencing Commission, Guidelines Manuel, § 2A3.4(a)(3). A two-level adjustment applies pursuant to § 3C1.1 because the defendant willfully attempted to obstruct the administration of justice with respect to the prosecution of the instant offense and the conduct related to the defendant's offense of conviction. Examples of conduct covered under this adjustment include "committing, suborning, or attempting to suborn perjury . . . if such perjury pertains to conduct that forms the basis of the offense of conviction." USSG § 3C1.1, Application Note 4(B). The Ninth Circuit held that "[a] defendant commits perjury for purposes of section 3C1.1 if, while under oath, he gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Taylor*, 749 F.3d 842, 848 (9th Cir. 2014) (internal quotation marks and citation omitted).

Here, the defendant attempted to obstruct the administration of justice when he committed perjury. At trial, the defendant testified that he did not intentionally touch the

United States' Sentencing Memorandum - 6
*United States v. Witt*, CR25-46 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

victim and that he was not masturbating on the plane. He also testified that if he touched the victim, it was an accident and occurred while he was sleeping. The defendant provided this false testimony willfully; it was an attempt to undermine the credible testimony of the victim and, ultimately, interfere with the administration of justice. The jury's verdict rejected his testimony entirely. The two-level enhancement under § 3C1.1 therefore applies.

The defendant objects to such an adjustment, asserting various arguments. First, he claims that if he provided false testimony, it was "based on confusion, mistake, or faulty memory, all due primarily to intoxication (in addition to the passage of time)." *See* Addendum to the Presentence Report, Objections by the Government, Defendant's Response 1. But the defendant cannot have his cake and eat it too. As acknowledged in his objection to the adjustment, Witt testified at trial that he was *not* intoxicated; he testified that he had had one drink on the flight. He recalled talking to V1, he recalled asking her questions and conversing with her. If his memory was faulty due to intoxication, he could and should have testified to that at trial. After all, he was not intoxicated when he testified. To assert now—after the jury rejected his story—that he was intoxicated at the time of the assault and his memory was faulty as a result, is to assert that he, in fact, lied under oath when he testified that he had one drink and was not drunk.

Second, the defendant appears to argue that falsely testifying at trial does not obstruct justice. But, as noted above, Application Note 4(B) of § 3C1.1 states that committing perjury is exactly the type of conduct covered under the obstruction of justice adjustment. Contrary to the defendant's contention, this application of the adjustment does not "chill defendants' right to testify in their own defense"— it appropriately deters them from committing perjury. Their right to testify in their own defense is protected, but there is no right to lie under oath. Witt committed perjury by falsely testifying under oath

United States' Sentencing Memorandum - 7
*United States v. Witt*, CR25-46 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

at trial. The two-level adjustment under § 3C1.1, therefore, applies and raises the total offense level to 14.

## B.    Criminal History Category and Guidelines Range

The defendant has no scoreable criminal history, and therefore has a criminal history score of I. PSR ¶¶ 38-41. The government agrees with Probation that there are no applicable departures from the guidelines. With a total offense level of 14 and criminal history score of I, Witt's sentencing guidelines range is 15 to 21 months of imprisonment. *Id* ¶ 85. Witt is also subject to a term of supervised release of at least five years, pursuant to the statutory mandatory minimum prescribed in 18 U.S.C § 3583(k). *Id* ¶ 87.

## IV.    GOVERNMENT'S SENTENCING RECOMMENDATION

The United States respectfully recommends the Court sentence the defendant to 21 months of confinement, followed by a five-year term of supervised release. The United States believes this sentence is appropriate in light of "the nature and circumstances of the offense," and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and "to afford adequate deterrence." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(B). While the government agrees that U.S. Probation's sentence recommendation of 24 months is reasonable, the government's recommendation takes into account its prior recommendations in similar cases and seeks consistency in analyzing and applying all Section 3553(a) sentencing factors, as set forth below.

## A.    Nature and Circumstances, and Seriousness of the Offense

The defendant, a 55-year-old man who found himself sitting next to an apparently sleeping teenaged girl on a flight, decided to relieve his "stress" by sexually assaulting and traumatizing her. He was manipulative and persistent, pulling his hand away to avoid getting caught when the flight attendant walked by or whenever V1 moved. V1, unsure of what to do, tried to make him stop by flinching repeatedly. But he did not stop. He repeatedly put his fingers on V1's bare thigh, moving onto her inner

United States' Sentencing Memorandum - 8
*United States v. Witt*, CR25-46 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

thigh, moving up to within an inch or two of her genitals, and putting his fingers under the helm of her shorts. His intention was crystal clear. And the only reason he stopped was because V1 was able to find the courage to get away. This conduct is serious and reprehensible. Witt must be held accountable for decisions, his actions, and the indelible impact he left on V1.

Unfortunately, sexual assaults on planes are not uncommon. The United States Attorney's Office in the Western District of Washington has received a significant number of reported sexual assaults occurring on planes in recent years. The U.S. Attorney's Office has prosecuted at least 15 of these cases in the last three years, and at least six of these cases have gone to trial before a jury—each resulting in a guilty verdict. The frequency of these incidents seems counterintuitive. After all, a plane is public place with many people seated closely to one another—committing a crime in such an environment and expecting to get away with it would seem foolish. But in several ways, a plane is a uniquely vulnerable environment: passengers are often seated in close proximity to strangers, with little room and few options for removing themselves from unwanted situations; passengers regularly attempt to sleep on planes while sitting next to unknown persons, increasing their vulnerability; and outside of a passenger's immediate neighbors (assuming there are any), there is limited visibility and a low likelihood of witnesses, particularly when cabin lights are dimmed and other passengers are asleep or focused on screens. These factors embolden perpetrators who believe they can engage in sexual misconduct with impunity.

These sexual crimes often have significant and lasting consequences on the victims. Even in cases when an assault is brief and the victim is an adult, the assaults can and often do have lasting impacts on victims.

United States' Sentencing Memorandum - 9
*United States v. Witt*, CR25-46 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- Approximately 70 percent of rape or sexual assault victims experience moderate to severe distress, a larger percentage than for any other violent crime.[1]
- 38 percent of victims of sexual violence experience work or school problems, which can include significant problems with a boss, coworker, or peer.
- 37 percent experience family/friend problems, including getting into arguments more frequently than before, not feeling able to trust their family/friends, or not feeling as close to them as before the crime.
- 67 percent of survivors who were victimized by a stranger experience professional or emotional issues, including moderate to severe distress, or increased problems at work or school.

V1 was only 19 years old at the time of the offense. She was subsequently diagnosed with post-traumatic stress disorder resulting from the assault, requiring ongoing therapy and medication. PSR ¶ 20. When she returned to school, she struggled with attending classes, her grades suffered, and she withdrew socially. *Id.* As V1 articulated in her letter to the Court addressing the defendant, "[i]t has been three years, and the consequences of your actions have not faded." PSR ¶ 19(d).

As Probation has noted in prior cases of Abusive Sexual Contact on planes, the confined and inescapable nature of a plane amplifies the severity of this conduct. *See United States v. Jurkovic*, No. CR23-001 RSL (W.D. Wash. Apr. 1, 2024), Dkt. 104 at 8. A victim cannot leave the plane or get much further than a few rows away from their assailant. The psychological trauma of being trapped with an assailant may undermine the victim's sense of safety in public spaces. *See id.* In this case, such trauma manifested in V1: she began to suffer from panic attacks triggered by common occurrences such as a

---

[1] Lynn Langton and Jennifer Truman, *Bureau of Justice Statistics Special Report: Socio-emotional Impact of Violent Crime* (September 2014), https://bjs.ojp.gov/content/pub/pdf/sivc.pdf.

United States' Sentencing Memorandum - 10
*United States v. Witt*, CR25-46 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

stranger sitting next to her or a professor closing the door, blocking her perception of an exit. PSR ¶ 20. She continues to struggle with anxiety in various circumstances, including whenever she needs to fly, and requires panic medication for each flight.

The nature, circumstances, and seriousness of the offense weigh heavily in favor of the government's sentencing recommendation.

**B.      History and Characteristics of the Defendant**

Witt's history and characteristics do not provide a sufficient basis for mitigation. Witt alleged to Probation that his stepfather was abusive and would kick him and other "physical stuff" until he was about 13 years old. PSR ¶ 47. Witt stated that he did not feel close to his family; his parents separated; and his mother misused alcohol. PSR ¶ 66. He moved out of his parents' home after graduating from high school in 1986. PSR ¶ 50.

Witt committed the sexual assault in 2022, at the age of 55. His alleged childhood trauma occurred over four decades prior. After he moved out of his childhood home, Witt married and had two children. Witt started his own business, Keith Witt Sales and Marketing, which he has operated for over a decade. PSR ¶¶ 51-52. His now ex-wife and daughter both continue to work with the company as subcontractors, and Witt has and continues to travel regularly to various states to meet with vendors as part of his work. PSR ¶¶ 52, 76. He is a well-employed professional with a six-figure annual income. PSR ¶ 80. He owns two cars, a motorcycle, and a dirt bike, which are all paid in full. PSR ¶ 81. He owned a home on Queen Anne in Seattle, which was also paid in full, where he still resides. *Id.*

Although he may have suffered some trauma during his childhood and abused drugs/alcohol at different points in his life, he was able to navigate successfully over the past three decades and achieve an economically prosperous and stable life surrounded by family. His trauma or alcohol use has not stood in the way. His trauma or alcohol use should not be used as an excuse or mitigating factor for his sexual assault and

traumatization of a teenage stranger who had the bad luck of sitting next to him on a plane.

If anything, his characteristics are aggravating. While Witt does not have a scoreable criminal history, his dishonesty when confronted with his conduct should be considered in a Section-3553(a) analysis. To this day, Witt continues to lie about his conduct, refusing to acknowledge what he did on the flight. He lied when he was questioned by police officers on the day of the incident and he lied when he testified at trial while under oath. As V1 articulated to Witt, "[y]ou exploited a young woman who trusted that the person sitting next to her would behave with basic decency…And when given the chance to take responsibility, you chose to deny it." PSR ¶ 19(f). The jury found Witt's testimony was not credible.

Moreover, an individual who fails to accept responsibility for his criminal conduct is more of a danger to the community. An individual who accepts responsibility takes a significant step toward accountability and, ultimately, rehabilitation. Here, not only did Witt fail to accept responsibility, but he also willfully testified falsely at trial in an attempt to cover up his actions and avoid accountability. His failure to acknowledge his wrongdoing and his efforts to hide what he did through deceit make him more dangerous to the community.

## C.      Need to Promote Respect for the Law, Provide Just Punishment for the Offense, and Afford Adequate Deterrence

The need to promote respect for the law, provide just punishment, and afford adequate deterrence weigh heavily in favor of a substantial sentence. As described above, Witt's conduct is serious and indefensible. He has demonstrated a continued disregard for the law, first by committing the crime at issue, then by lying to police officers at the airport, and then by committing perjury at trial. A substantial sentence is necessary to deter Mr. Witt from engaging in such conduct.

United States' Sentencing Memorandum - 12
*United States v. Witt*, CR25-46 RSM

A significant sentence is also necessary to afford adequate general deterrence. General deterrence is critical in this matter due to the increasing frequency of reports of sexual assaults on planes. The response must be unequivocal. A short sentence would be a slap on the wrist; it would hinder general deterrence by sending a message that this type of conduct is not "a big deal." It would give perpetrators the green light and deter victims from reporting such conduct. For a victim, the hope of seeking justice would be eclipsed by the pain of recounting the traumatic experience if the likelihood of serious consequences were minimal. For these reasons, general deterrence is a critical factor in crafting an adequate sentence in this case.

The government's recommendation would serve to deter Witt from this type of conduct and would send a strong message to others that this type of sexual contact will result in significant consequences.

**D.     Need to Avoid Unwarranted Sentence Disparity**

Section 3553 instructs the Court to consider the need to avoid unwarranted sentencing, with the "primary goal" of promoting nationwide consistency in sentencing, *United States v. Jaycox*, 962 F.3d 1066, 1071 (9th Cir. 2020)—that is, to avoid "unjustified difference" across judges or districts, *United States v. Saeteurn*, 504 F.3d 1175, 1181 (9th Cir. 2007). In considering this need, the Court should still be mindful of similar cases in this district, all of which help support the government's recommendation of 21 months of imprisonment.

Over the last couple of years in the Western District of Washington, six defendants (including Witt) were convicted by a jury of Abusive Sexual Contact. The sentences and relevant facts are briefly summarized below.

Abhinav Kumar is a similarly situated defendant who was sentenced to 15 months in custody and five years of supervised release after he was convicted by a jury of one count of Abusive Sexual Contact. *United States v. Kumar*, 2:24-cr-00041-JNW. His offense conduct was similar to the conduct for which Witt was convicted at trial: he

United States' Sentencing Memorandum - 13
*United States v. Witt*, CR25-46 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

sexually violated a teenaged girl (a 17-year-old) while she appeared to be asleep beside him on a flight. Specifically, Kumar touched the victim's breast as she appeared to sleep. Although these cases parallel one another in many ways, a key distinction is that Witt, unlike Kumar, obstructed justice by falsely testifying under oath during his trial.

Justin Baker was sentenced to 21 months of imprisonment with a five-year term of supervised release after he was convicted by a jury of Abusive Sexual Contact. *See United States v. Justin Baker*, 2:24-CR-00058-JCC. In this case, Baker sexually violated an 18-year-old female seated next to him on a plane by rubbing her genitalia over her clothing and grabbing her buttocks and breast without consent. The Court's above-guidelines sentence was appropriate given the defendant's egregious conduct combined with his history which included a prior sexual assault of a teenager.

Milan Jurkovic was sentenced to eight months in prison followed by a five-year term of supervised release after he was convicted of one count of Abusive Sexual Contact. *See United States v. Milan Jurkovic*, 2:23-CR-001-RSL. Again, the facts are similar, with the defendant sexually violating a teenager (a 16-year-old) seated next to him on a plane. In this matter, the defendant touched the inner thigh of the teenager, who—like V1 and the vast majority of victims in these cases—froze when she was contacted, in shock that a stranger on a plane would touch her in this way. Unlike Witt, however, Jurkovic did not testify falsely and had a lower guidelines' range.

Trayton Ballot was sentenced to 18 months in prison followed by a ten-year term of supervised release after he was convicted by a jury of Abusive Sexual Contact. *See United States v. Ballot*, 2:24-CR-12-JHC. Similar to Witt, Ballot repeatedly touched the inner thigh of the victim, a 17-year-old female seated beside him on an overnight flight. Similar to Witt, Ballot's guidelines range was 15 to 21 months (based on a vulnerable victim adjustment under USSG §3A1.1). Ballot had a documented history of prior sexual assault, unlike Witt. But, also unlike Witt, he did not lie under oath at trial.

United States' Sentencing Memorandum - 14
*United States v. Witt*, CR25-46 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Munir Walji was also convicted by jury of Abusive Sexual Contact. *United States v. Walji*, 2:23-CR-00011-TL. He was sentenced to home detention for two years instead of prison, however, due to medical concerns over his cancer treatment. He was also sentenced to ten years of supervised release.

Outside of this district, courts have imposed similar sentences for similar conduct. *See United States v. Manuella*, 2:23-cr-132 (DNJ) (sentencing defendant to 24 months' imprisonment for airline sexual assault in which defendant touched the victim's groin and inner thigh over the victim's clothing); *United States v. Durbesula*, 1:20-cr-0090-MR (WDNC) (sentencing defendant to 24 months for airline sexual assault in which defendant waited for victim to appear to be asleep and then groped her bare breast).

While all the facts of each of these cases differ in some ways, they are substantially similar enough to support the government's sentence recommendation of 21 months' imprisonment followed by five years of supervised release. This recommendation accounts for variations in defendants' criminal histories, the relative egregiousness of the conduct, as well as the defendants' conduct in obstructing the administration of justice.

## V.    RESTITUTION

The parties have conferred and anticipate reaching agreement as to restitution by the date of the sentencing hearing. The defendant tentatively stipulates to a restitution amount of $4,487.45. Should the parties not reach a final agreement before the hearing, the government asks the Court to schedule a restitution hearing at a later date.

For a conviction of Abusive Sexual Contact, under 18 U.S.C. § 2244, restitution is mandatory pursuant to 18 U.S.C. § 2248. Under this statute, the court shall order the defendant pay restitution to the victim in "the full amount of the victim's losses," which includes "medical services relating to physical, psychiatric, or psychological care . . . necessary transportation . . . and any other losses suffered by the victim as a

United States' Sentencing Memorandum - 15
*United States v. Witt*, CR25-46 RSM

proximate result of the offense." 18 U.S.C. § 2248(a), (b)(1), (b)(3). The Ninth Circuit has held that "a district court can order restitution in a definite amount for future therapy costs." *United States v. Follet*, 269 F.3d 996, 1001 (9th Cir. 2001) (*citing United States v. Laney*, 189 F.3d 954, 967 (9th Cir. 1999)). In *Laney*, the Court decided, as a matter of first impression, that restitution under 18 U.S.C. § 2259 allowed for future counseling. *Laney* at 967. Two years later, the Court in *Follet* confirmed that this holding applies to 18 U.S.C. § 2248, an identical restitution provision. *Follet* at 1001.

As described above and articulated in her letter to the Court, V1 was deeply impacted by the defendant's conduct and continues to struggle with anxiety, panic attacks, and mental health challenges stemming from the defendant's criminal conduct. V1 incurred costs related to mental health treatment in the form of therapy and medication as a direct result of this incident. The parties have tentatively agreed to a restitution amount that includes the costs of medication and therapy that she has incurred over the last three years and will incur for the next two years, as well as the cost of transportation for V1 to attend the sentencing hearing, as authorized under 18. U.S.C. § 2248.

Specifically, the defendant has tentatively agreed to pay the following:

- Past therapy sessions in the amount of $2,250 - 20 sessions at $100/session from the period after the offense and though February 2026; 10 sessions at $25 co-pay/session from February through the date of the sentencing memo;

- Future therapy sessions in the amount of $1,200 - two therapy sessions per month at a rate of $25 co-pay/session for two years;

- Prescription anxiety medication in the amount of $630; and

- Transportation costs for attending sentencing hearing in the amount of $407.45 for mileage reimbursement for travel to and from the courthouse.

United States' Sentencing Memorandum - 16
*United States v. Witt*, CR25-46 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## VI.   CONCLUSION

For the reasons set forth above, the government respectfully recommends the Court impose a custodial sentence of 21 months, to be followed by a five-year term of supervised release, a mandatory special assessment of $100, and order restitution in the amount of $4,487.45.

DATED this 25th day of June, 2026.

Respectfully submitted,

 s/ Rachel Yemini
RACHEL YEMINI
BRIAN WYNNE
Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-2275
Fax: 206-553-2234
Email: Rachel.yemini@usdoj.gov

United States' Sentencing Memorandum - 17
*United States v. Witt*, CR25-46 RSM

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970